**HOLDEN et al. v. DAHLBERG et al.**

No. 12013.

Court of Civil Appeals of Texas. San Antonio.

Feb. 8, 1950.

Rehearing Granted March 15, 1950.

Rehearing Overruled April 12, 1950.

Ward & Brown, Corpus Christi, Allen Wood, Corpus Christi, for appellants Nana and Harriet Holden.

Vinson, Elkins, Weems & Francis, Houston, for appellant B. I. Dahlberg.

McCampbell, Wood & Kirkham, Corpus Christi, Neel, King & Rachal, Corpus Christi, Black & Stayton, Austin, Robert B. Wallace, Corpus Christi, for appellees.

BROETER, Justice.

This is a suit in trespass to try title. Nana Holden and Harriet Holden sued B. I. Dahlberg, Steve Paul and D. R. Roark, who was afterwards dismissed from the suit, to recover the entire title to twenty-one and one-half outlots of the Fulton Farm and Outlots Subdivision, and certain lots and blocks in the town of Fulton, all situated in Aransas County, Texas. In this case there were two appeals perfected, one by the plaintiffs, Nana Holden and Harriet Holden, and the other by defendant B. I. Dahlberg. For convenience, the parties will be referred to herein as plaintiffs and defendants.

The agreed common source of title is Harriet G. Fulton, and the plaintiffs in establishing their chain of title introduced a deed executed by Harriet G. Fulton on July 16, 1906, whereby she conveyed the land in controversy, and other land, to her three daughters, namely, Hattie S. Holden, Lee C. Fulton and Annie W. Holden, and the plaintiffs, Nana Holden and Harriet Holden, further offered evidence that they and Linda Mae Beaman were the only children of Annie W. Holden, and own title, as heirs of Annie W. Holden, who died intestate July 24, 1935, and by deed from their sister, Linda Mae Beaman, dated March 30, 1936.

The defendants B. I. Dahlberg and Steve Paul claim title through a sale by W. H. Young, a substitute trustee appointed under a deed of trust executed by Nana Holden and Harriet Holden on March 6, 1930, and to show their chain of title said defendants offered a deed from Annie W. Holden to her three daughters, Nana Holden, Harriet Holden and Linda Mae Beaman, dated November 5, 1928, and two deeds, one dated March 6, 1930, and the other, March 7, 1930, both from Linda Mae Beaman and R. J. Beaman to Nana Holden and Harriet Holden. They also offered deed of trust from plaintiffs to John S. McCampbell, trustee for the benefit of Manufacturers Acceptance Corporation, dated March 6, 1930; resignation of John McCampbell, Trustee, dated July 21, 1933; appointment of W. H. Young, Substitute Trustee, by B. I. Dahlberg, dated July 26, 1933; Deed from W. H. Young, Substitute Trustee, to B. I. Dahlberg, dated March 6, 1936; assignment of note and lien from Manufacturers Acceptance Corporation to B. I. Dahlberg, dated May 18, 1936, and a deed from said B. I. Dahlberg to Steve Paul, dated October 1, 1936.

Other instruments were introduced in evidence by the parties in the trial, which will be mentioned or referred to in this opinion, if necessary, but those enumerated above outline the title on which the respective parties rely for recovery.

The pleadings in this case are numerous and because of our confirmed opinion that this case should be reversed we will not quote the pleadings, but will limit our reference thereto by stating the substance of the claims as made raising the points which we deem require a reversal of this judgment. Plaintiffs claim that the deed dated November 5, 1928, from Annie W. Holden to Nana Holden, Harriet Holden and Linda Mae Beaman, fails to sufficiently describe the land intended to be conveyed, and same was therefore invalid. They also claim that the deed of March 6, 1930, executed by Linda Mae Beaman and husband, R. J. Beaman, was invalid on account of an insufficient description of the land intended to be conveyed; that the deed executed by Linda Mae Beaman and husband, dated March 7, 1930, to the plaintiffs, was invalid because of a defective acknowledgment; and that such deeds of March 6 and 7, 1930, conveyed no title because the Beamans had none at that time. Plaintiffs claim also that the deed dated March 30, 1936, executed by Linda Mae Beaman and husband, R. J. Beaman, to plaintiffs, given to perfect the conveyance dated March 7, 1930, did not relate back and serve to pass title to plaintiffs as of March 7, 1930, and that the deed of trust executed by plaintiffs to John S. McCampbell, Trustee, dated March 6, 1930, did not encumber any interest in the property described therein, because they had no title when they executed the same and that it was a quitclaim deed and did not convey any after-acquired title. They also attacked such deed of trust for other reasons not necessary to mention here, and claimed that the foreclosure sale of the land to B. I. Dahlberg was void because W. H. Young, substitute trustee, had not been appointed by the holder of the note secured thereby and on other grounds. Steve Paul claimed to be an innocent purchaser of the land in controversy from B. I. Dahlberg, who was the purchaser under the substitute trustee's sale.

The trial court held the description of the land in the deed from Annie W. Holden to Nana Holden, Harriet Holden and Linda Mae Beaman, dated November 5, 1928, was valid. That the deed dated March 30, 1936, executed by Linda Mae Beaman and husband, R. J. Beaman, to plaintiffs, given to perfect the conveyance dated March 7,

1930, related back and served to pass title to plaintiffs as of March 7, 1930, and was encumbered by the deed of trust of that date, and that such deed of trust was not a quitclaim deed; that the sale under the deed of trust was void and that Steve Paul was an innocent purchaser, and rendered judgment that plaintiffs recover complete title from B. I. Dahlberg, but that they recoved nothing from Steve Paul. Findings of fact and conclusions of law were filed by the judge. From this judgment the plaintiffs and B. I. Dahlberg have appealed.

No question is raised by defendants as to the sufficiency of the proof offered by the plaintiffs as outlined above, and as a result of such proof it is the opinion of this Court that, unless the defendants are entitled to recover under their chain of title and other evidence, the plaintiffs became the owners of an undivided one-third of the property deeded by Harriet G. Fulton on July 16, 1906, to her three daughters, and that such undivided one-third was acquired by them, two-ninths by inheritance from their mother, Annie W. Holden, who died July 24, 1935, and one-ninth by the deed to them from Linda Mae Beaman and R. J. Beaman dated March 30, 1936. The first point presented to us by plaintiffs is as to the validity of the deed dated November 5, 1928, from Annie W. Holden to Nana Holden, Harriet Holden and Linda Mae Beaman. This deed was offered in evidence by defendants and is a necessary link in their chain of title.

The sufficiency of the description of the land or interest in land in this deed is challenged. The trial court held such deed sufficiently described the land the grantor sought to convey, and error is assigned by plaintiffs on such ruling. This deed, after eliminating formal parts, recites that Annie W. Holden does give, "grant, bargain, sell and convey to the said Harriet Holden, Nana Holden and Mrs. Linda May Beaman, an undivided interest in all of all those certain tracts, pieces or parcels of land owned by me or to which I have any claim, demand or interest, situated in the Counties of Aransas and Webb, in the State of Texas, together with all and singular to rights, members and appurtenances to the same in any manner belonging." And, following the habendum clause, the deed further recites: "Being an undivided interest in one-third of the same premises conveyed by Harriet G. Fulton to Hattie S. Holden, Lee C. Fulton and Annie W. Fulton by deed dated July 16th, 1906, recorded in Volume Y, page 545 of the Deed Records of San Patricio County, Texas, together with any property that may be in my name or come to me by inheritance from the said Harriet G. Fulton, above referred to, and from Elbridge Gerry Holden, my husband, now deceased, in the Counties of Aransas and Webb, State of Texas."

We are of the opinion that the description of the land as contained in this deed is insufficient to convey any title. It is established by the record herein that Annie W. Holden, formerly Annie W. Fulton, was on the date of this deed the owner of an undivided one-third of the land conveyed to her and her two sisters by their mother, Harriet G. Fulton. It is not disputed that the farm lots, town lots and blocks involved in this suit were a part of the land so conveyed. Plaintiffs sue for the whole of the title to such lots, but they and defendants, by introducing in evidence the deed from Harriet G. Fulton to Annie W. Holden and her two sisters, established that plaintiffs would either by inheritance or deed from their mother acquire only two-ninths of the property in controversy.

The granting clause in the deed from Annie W. Holden, dated November 5, 1928, to these plaintiffs insufficiently describes the land sought to be conveyed, because it does not specify the extent of the interest conveyed.

In Carter & Brothers v. Ewers, 133 Tex. 616, 131 S.W.2d 86, 123 A.L.R. 908, in an opinion by Judge Taylor which was adopted by the Supreme Court of Texas, it is said:

"The land described in the deed is 'an undivided interest in and to a subdivision of 200 acres of a survey in the name of Swiny, situated in the County of Polk, State of Texas.'

"The description of the 200-acre subdivision is such that if the deed had purported to convey the subdivision itself rather than

'an undivided interest' therein, the instrument would not fail as a conveyance on account of uncertainty of description, as was in effect held by the Court of Civil Appeals. It contains no language however indicating the extent of the interest in question, other than that necessitating the conclusion that it is an undivided interest less than the whole in the subdivision described. Whether a half, a fifth or a tenth, or any other certain interest, was intended to be conveyed, is not indicated. It may be added that neither the description above quoted, nor the deed itself, contains any word or words of ownership. It will be observed that the descriptive words employed by the grantors are in themselves indeterminative." 131 S.W.2d at page 87.

131 S.W.2d at page 88 of the same opinion it is said:

"Plaintiffs in error contend that it should be presumed that the grantors intended some undivided interest in the tract less than the whole should pass by the conveyance, and that since the indefinite language used in the description was chosen by them, it should be construed most strongly against them; that the language 'an undivided interest' so construed means 'our undivided interest,' or 'all of our undivided interest'; that the uncertain description is thereby rendered certain by construction.

"The indulgence of the suggested presumption cannot supply the necessary words, or change the indefinite 'an' to the certain 'our'. The uncertainty results from the failure of the grantors to state the extent of the interest attempted to be conveyed. To indulge a presumption that they intended to convey *some interest which they owned* would simply add to their language by implication words they did not write into the deed, in an effort to clarify a descriptive phrase that is indeterminative."

We are well aware of the other recitations in the above-cited opinion, concerning the lack of ownership language in the deed there involved, which would furnish a key for extrinsic evidence which might make certain the extent of interest sought to be conveyed. No words of ownership were used in the deed involved in that case, and the description in the deed here involved does describe the land sought to be conveyed as "an undivided interest in all of all those certain tracts, pieces or parcels of land owned by me * * * in the Counties of Aransas and Webb." It seems to us that the words "owned by me," in the position they are used in this description, refer to the tracts or parcels in which an interest is sought to be conveyed. Such words identify the tracts of land rather than the amount or extent of interest intended to be conveyed. These words cannot by transposition be used to refer to the extent of undivided interest sought to be conveyed as being all that undivided interest "owned by me," because by so doing the description would not identify the parcels or tracts in which the interest is sought to be conveyed. The fault in this description is that it fails to say what amount of undivided interest is sought to be conveyed. The grantor in this deed was the mother of the grantees therein. We cannot get from this deed the intention of the grantor. She may have intended that her daughters should hold an undivided interest in the land, but the extent of that interest cannot be determined.

The words "owned by me," as used here, do not refer to any conveyance whereby grantor acquired the land, and do not in any way show that the grantor intended to convey that which she acquired by virtue of any particular conveyance.

If we refer to extrinsic evidence to determine the extent of interest intended to be conveyed by this deed, we would refer to the deed from Harriet G. Holden to Annie W. Holden and her two sisters, and we would find, as hereinabove stated, that she only owned a one-third undivided interest, so we would necessarily say she conveyed by this deed an undivided interest in that undivided interest owned by her by virtue of such conveyance. Such description would be invalid.

The description in the deed that follows the habendum clause does not make certain the amount of interest intended to be conveyed by such deed. It makes the amount of interest intended to be conveyed by the grantor more uncertain. It says,

"Being an undivided interest in one-third of the same premises conveyed by Harriet G. Fulton to Annie W. Fulton and" two sisters. So here we have a description that surely says the grantor only intended to convey an undivided interest in the one-third that she acquired by her mother's deed. This in no uncertain terms expresses the grantor's intention to convey only an undivided interest in the one-third interest she owned, and not *the* undivided interest she owned, and the extent of the interest intended to be conveyed cannot be determined. The additional clauses in this descriptive paragraph do not aid in arriving at the grantor's intention, as they refer to other and additional property intended to be conveyed. The rules of construction referred to by appellee Steve Paul in his brief cannot be made to apply here. We cannot give the description a construction that is valid and thus conclude that such construction should prevail over a construction holding the description invalid. The several rules of construction referred to cannot be made to apply to the description in the deed here considered.

We therefore conclude that the deed from Annie W. Holden to Nana Holden, Harriet Holden and Linda Mae Holden is invalid for failure of description of the land or interest in land intended to be conveyed. Curdy v. Stafford, 88 Tex. 120, 30 S.W. 551; Norris v. Hunt, 51 Tex. 609; Knowles v. Torbitt, 53 Tex. 557; Gallagher v. Rahm, Tex.Civ.App., 31 S.W. 327; Clark v. Gauntt, 138 Tex. 558, 161 S. W.2d 270.

It follows, therefore, that neither of the grantees in such deed acquired any interest in the land in controversy in this suit as a result of such deed.

We next consider the second point presented by plaintiffs (appellants here) in their brief, which is as follows: "The trial court erroneously concluded the Deed of Trust from Nana and Harriet Holden to Jno. S. McCampbell was a quitclaim deed."

■ Our conclusion on the first point raised by plaintiffs Holden is to the effect that they did not acquire any interest in the land in controversy from their mother, An-

nie W. Holden, by the deed dated November 5, 1928. Plaintiffs did acquire two-thirds of the one-third of the land in controversy owned by their mother, Annie W. Holden, at the time of her death, July 24, 1935, by inheritance from her. The plaintiffs by this point contend that this after-acquired title did not pass by the trustee's deed because they mortgaged only their chance of title. This point is sustained.

The deed of trust conveyed only "all of our right, title and interest in and to any and all property owned by us, * * * and including all of our rights, title and interest in and to those several tracts or lots of land" involved in this suit.

In Hunter v. Eastham, 95 Tex. 648, 69 S. W. 66, 67, Judge Williams passed on a deed which granted "all my right, title, and interest in and to" the land. The deed contained the usual habendum and special warranty. The Court said: "We are also of the opinion that the deed from Pace to Eastham, on its face, shows, prima facie, at least, that the latter bought only such title as his grantor had. Harrison v. Boring, 44 Tex. 255 262, 263."

In Houston Oil Co. of Texas v. Niles, Tex.Com.App., 255 S.W. 604, 609, the Court passed on a deed granting "all the right, title, interest, and claim which we have in and to" the land, saying: "While plaintiffs insist that this deed is a conveyance of the land itself, and not a mere conveyance of the grantor's title or chance of title, we think the holdings of the Supreme Court in the following cases conclusively establish the contrary: Cook v. Smith, 107 Tex. 119, 174 S.W. 1094, 3 A.L.R. 940; Threadgill v. Bickerstaff, 87 Tex. 520, 29 S.W. 757; Richardson v. Levi, 67 Tex. 359, 3 S.W. 444. Cook v. Smith is reported in 3 A.L.R. 940, appended to which, beginning at page 945, is a very complete note and citation and digest of authorities upon the 'test of conveyance as quitclaim or otherwise.' We think the deed in question is so clearly a quitclaim under the decisions of this state and other jurisdictions that it is only necessary to refer to the cases."

We will next consider Points Nos. 3 and 4, raised by plaintiffs. Such points are jointly referred to in the brief and we will

also consider them jointly. They are as follows:

"3. The trial court erroneously found that the deeds dated March 6, 1930, and March 7, 1930, from Linda Mae Beaman to plaintiffs were delivered at the same time as the deed of trust, and effectively encumbered the grantor's interest (one-ninth) in the lands described in the deed of trust.

"4. The trial court erroneously found that the deed from Linda Mae Beaman to plaintiffs dated March 30, 1936, had the effect of relating back to their deed of March 7, 1930, so that the land conveyed thereby was included in the deed of trust."

We are of the opinion that such points should be sustained for the following reasons:

█ Linda Mae Beaman not having any interest in the land in controversy on March 6th or March 7, 1930, the two deeds executed by her and her husband on such dates conveyed nothing to the plaintiffs, unless the deed executed by Linda Mae Beaman and her husband to the plaintiffs dated March 30, 1936, had the effect of relating back to her deed of March 7, 1930, so that the land conveyed thereby was encumbered by the deed of trust executed by plaintiffs. We are of the opinion that such deed of March 30, 1936, could not relate back to March 7, 1930, and include in such deed of March 7, 1930, the interest in the property which Linda Mae Beaman owned in 1936. Linda Mae Beaman acquired the same by inheritance from her mother, Annie W. Holden, who died on July 24, 1935. Her two deeds dated March, 1930, contained no statement or words indicating that it was the intention of Linda Mae Beaman to include in either of such conveyances any property which she might thereafter acquire. As heretofore stated, the deed of trust given by her sisters, Nana and Harriet Holden, was dated March 6, 1930, and such deed of trust was foreclosed and deed was executed under such foreclosure proceedings by W. H. Young, substitute trustee, on March 6, 1936. There was no sale of and no contention made here that any interest in such land acquired by Linda Mae Beaman through inheritance from her mother was attempted to be made by the sale under the deed of trust. The deed made March 7, 1930, by Linda Mae Beaman to her sisters was a nullity, because it conveyed nothing, she not owning any property at that time. Montgomery v. Hornberger, 16 Tex.Civ.App. 28, 40 S.W. 628; King v. Haley, 75 Tex. 163, 12 S.W. 1112.

We will next consider the fourth point raised in the brief of appellant B. I. Dahlberg, which is as follows: "The trial court erred in rendering judgment in favor of Nana and Harriet Holden against this Appellant, B. I. Dahlberg, for the entire title and possession of the property in controversy for the reason that Nana and Harriet Holden, plaintiffs in the trial court, showed title in themselves, if at all, to no more than an undivided one-third (1/3) interest; the defendant, B. I. Dahlberg, not being a trespasser, there is no evidence, and the evidence is insufficient to support the judgment of the trial court in favor of the Holdens against the Appellant Dahlberg to the extent decreed."

We believe that this point is sound and that this case should be reversed as a result of the erroneous judgment entered herein.

As more fully stated hereinabove, Nana and Harriet Holden offered evidence of title in themselves only to the extent of no more than the undivided one-third (1/3) interest acquired by Annie W. Holden from Harriet G. Fulton. Nevertheless, the trial court permitted the Holdens to recover the entire title and possession of the property in controversy from B. I. Dahlberg, and the Holdens, plaintiffs in the trial court, did not attempt to prove Dahlberg had no other title or that Dahlberg was claiming only the Annie W. Holden one-third interest.

█ In order for a plaintiff in trespass to try title to recover the entire title and possession of the property in controversy on proof only of an undivided interest therein, the plaintiff must affirmatively establish that the defendant is in fact a trespasser without any title at all. 41 Tex. Jur. p. 473.

In the early case of Davidson v. Wallingford, 1895, 88 Tex. 619, 32 S.W. 1030, 1033, the Court said: "We do not understand it to be the law that a tenant in common can, by an action of trespass to try title, evict the defendants by merely showing that he has an undivided interest in the land. The theory upon which he recovers the exclusive possession is that while, as against his cotenants, he is entitled only to joint possession, as against a trespasser, he is entitled to the exclusive possession. Hence it follows, as we think, that when a tenant in common seeks to recover of a defendant the exclusive possession of land, he should prove, not only his own title to an undivided interest, but also that the defendant has no title to any interest."

The following cases sustained this rule: Steddum v. Kirby Lumber Company, 1920, 110 Tex. 513, 221 S.W. 920; Land v. Banks, Tex.Com.App., 1933, 254 S.W. 786, 30 A. L.R. 1; Wells v. W. T. Carter & Bro., Tex.Civ.App., Beaumont, 1935, 78 S.W.2d 678, affirmed 106 S.W.2d 1050, 115 A.L.R. 1293; Cook v. Spivey, Tex.Civ.App., Amarillo, 1943, 174 S.W.2d 634; Hicks v. Southwestern Settlement & Development Corporation, Tex.Civ.App., Beaumont, 1945, 188 S.W.2d 915 err. ref. want of merit.

We believe that our rulings as above outlined fully dispose of this case and as a result thereof it should be reversed and remanded. Therefore, it is unnecessary for us to consider the numerous other points raised in the briefs.

Reversed and remanded.

## On Motion for Rehearing.

In our original opinion in this case we sustained the fourth point raised in the brief of the appellant B. I. Dahlberg and held in effect that the trial court erred in rendering judgment in favor of Nana and Harriet Holden against the appellant B. I. Dahlberg for the entire title and possession of the property in controversy when said plaintiffs had proven title in themselves to no more than an undivided one-third interest, the evidence not having established that B. I. Dahlberg was a trespasser. Based upon such ruling we reversed and remanded this cause.

We have by study of the briefs filed in support of the motions for rehearing re-examined the authorities cited therein, as well as many other authorities, and determined that such ruling was erroneous and that instead of reversing and remanding this case the same should be reversed and rendered in favor of the appellants Nana and Harriet Holden. Annie W. Holden, by virtue of the deed from Harriet G. Fulton, dated July 16, 1906, became a tenant in common with her two sisters, Hattie S. Holden and Lee C. Fulton, each of them acquiring thereby an undivided one-third of the property in controversy. The interest thus acquired by Annie W. Holden upon her death passed to her three daughters, namely, Nana Holden, Harriet Holden and Linda Mae Beaman. The interest of Linda Mae Beaman was by deed, executed by herself and husband, conveyed to Nana and Harriet Holden. Thus they became co-owners with their aunts Hattie S. Holden and Lee C. Fulton. We believe this evidence establishes the ownership of the entire title to the property in controversy. Neither B. I. Dahlberg nor Steve Paul offered any evidence to connect them with the ownership of Hattie S. Holden or Lee C. Fulton. The claim that they sought to establish in this suit was limited to the interest of Nana and Harriet Holden. We believe, therefore, that B. I. Dahlberg and Steve Paul are thus shown to be trespassers and that under the following decisions, to-wit: Gaither v. Hanrick, 69 Tex. 92, 6 S.W. 619, Caruthers v. Hadley, Tex.Civ. App., 115 S.W. 80, and the cases cited therein, as well as the opinion written by Chief Justice Phillips in Steddum v. Kirby Lumber Co., 110 Tex. 513, 221 S.W. 920, 924, the plaintiffs, being cotenants as against mere trespassers, are entitled to recover judgment for the entire title and possession of the property in controversy and that this cause should be reversed and rendered in favor of such plaintiffs.

Reversed and rendered.